# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
                    **PLAINTIFF,**

**vs.**                                        **Case No. 5:24-cr-40040-TC**

**DOUGLAS HARPSTER,**
                    **DEFENDANT.**

## GOVERNMENT'S MOTION IN LIMINE

**COMES NOW** the United States of America, by and through Ryan A. Kriegshauser, United States Attorney for the District of Kansas, and Sara L. Walton, Assistant United States Attorney, and respectfully submits the following motion in limine.

A motion in limine is "a creature of neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence, the motion in limine gives a court the chance to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *United States v. Cline*, 188 F.Supp.2d 1287, 1291 (D.Kan. Feb. 21, 2002)(internal citations omitted). Motion in limines further assist the parties in preparing for trial, thus eliminating objections and delay. However, a trial court

1

may alter its limine ruling based on developments at trial or on its own sound judicial discretion. *Luce v. United States*, 469 U.S. 38, 41, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

The government seeks pretrial rulings to: (1) preclude the defendant from asserting marital privilege; (2) arguing jury nullification; and (3) referencing sentencing consequences of the charged offenses. Further, the government requests the Court conduct certain inquiries during a pretrial hearing pursuant to *Frye/Lafler*.

### DEFENDANT'S INVOCATION OF MARITAL PRIVILEDGE

First, the government requests the Court issue a pretrial ruling prohibiting the defendant from invoking marital privilege. The government has subpoenaed Cari Harpster, the wife of the defendant, to testify at the jury trial currently scheduled for October 7, 2025. The government seeks to question Ms. Harpster about her use of the electronic devices located in her residence, the wireless internet provider for the home, whether that internet is password protected and who all resided in the home. The government also seeks to question Ms. Harpster regarding her work schedule, which at the time of the offense conduct included overnight shifts and holidays. Ms. Harpster may also be asked to answer questions related to the layout of the home and allocation of space for the three residents. In the event the defendant seeks to pass blame for the criminal offense to his wife, she will be asked whether she engaged in the trafficking of child sexual abuse material on the internet.

According to the principles of common law, courts recognize two separate forms of marital privilege: the marital communications privilege and the martial testimonial privilege. *United States v. Montague*, 421 F.3d 1099, 1103 (10th Cir. 2005).

### *Marital Communications Privilege*

Either spouse can assert the marital communications privilege to prevent the other from testifying as to confidential communications made during a marriage. "The party seeking to overcome the privilege has the burden of establishing that the communications were not intended to be confidential." *United States v. Bahe*, 128 F.3d 1440, 1441-42 (10th Cir. 1997). The marital communications privilege, however, does not apply if a communication due to the circumstances or its nature was not intended to be confidential, *e.g.*, made in the presence of a third party. *Wolfe v. United States*, 291 U.S. 7, 14 (1934).

The confidential communications privilege protects (1) communications between spouses, (2) made privately, and (3) during a valid marriage. The party seeking to assert the privilege bears the burden of establishing its applicability. *United States v. Knox*, 124 F.3d 1360, 1365 (10th Cir. 1997). "Marital communications are presumed to be confidential," but "that presumption may be overcome by proof of facts showing that they were not intended to be private." *Pereira v. United States,* 347 U.S. 1, 6, (1954).

None of the testimony the government seeks to elicit from Ms. Harpster falls within the confidential marital communications privilege.  First, Ms. Harpster will

not be asked to testify regarding communication between her and the defendant. For example, testimony regarding Ms. Harpster's use of a particular electronic device or the layout of the family home is not communication with the defendant. Second, much of her anticipated testimony involves a third party, and therefore, was not made privately.   For example, testimony regarding her work schedule involves her employer and testimony regarding the wireless internet provider likewise involves a third party.   Therefore, the marital communication privilege does not apply to Ms. Harpster testimony, and the defendant cannot invoke such privilege to prevent Ms. Harpster from testifying.

### *Marital Testimonial Privilege*

The marital testimonial privilege permits one spouse to decline to testify against another during a marriage.  *Bahe*, 128 F.3d at 1442. More specifically, the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying. *Trammel v. United States*, 445 U.S. 40, 53 (1980).

Whether Ms. Harpster invokes her privilege not to testify against her husband is her decision alone.  The defendant cannot invoke the privilege on her behalf.  Prior to Ms. Harpster testifying, the Court should recess the jury and inquire of Ms. Harpster whether she intends to invoke privilege and whether that decision was made voluntary and without undue influence from the defendant or the government.

In the event the defendant attempts to implicate his wife as an alternative suspect, the government requests the Court appoint Ms. Harpster an attorney to advise her of her testimonial privilege, as well as her Fifth Amendment privilege.

**STATEMENTS OR ARGUMENTS IN SUPPORT OF JURY NULLIFCIATION**

Second, the government requests the Court issue a pretrial ruling prohibiting the defense from raising or arguing jury nullification. The Tenth Circuit has held that there is no right to jury nullification. *Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir.1999). In fact, courts have a duty to prevent counsel from urging a jury to nullify. *United States v. Young,* 470 U.S. 1, 7–10 (1985).  It is well-established that the court instructs the jury as to the rules of law and that the jury applies the facts as they find them to those rules." *United States v. Grismore*, 546 F.2d 844, 849 (10th Cir.1976).

American history shows the early concern by the framers that justified vesting jurors with the ability to craft both the facts and the law was short-lived; its pitfalls quickly revealed, and our jurisprudence has been built on two centuries of jurors deciding facts, not law. 59 CASE. W. RES. L. REV. at 96 (2008). It is likely that a deep-seated distrust of judges appointed and removable by the King of England was prominent in the founders' minds.  As distrust receded in the new colonies, there came increasing acceptance that under a republic, the protection of citizens lay not in recognizing the right of every jury to make its own law, but rather in following the democratic processes, through the election of legislators, for changing the law. See *U.S. v. Dougherty,* 473 F.2d 1113, 1132 (D.C. Cir.1972).

In *Sparf v. United States,* 156 U.S. 51 (1895), the Court affirmed the right and duty of the judge to instruct on the law and the jury's concomitant duty to follow it. The Court rejected any suggestion that the jury could disregard the law, in part, because to hold otherwise would place jurors in a position "superior to the national legislature, and its laws will be subject to their control. The power to abrogate or to make laws nugatory is equal to the authority of making them." *Id.* at 71. Instead, the powers of the court and jury "should be kept distinct and separate." *Id.* The jury's duty in criminal cases is "to take the law from the court, and apply the law to the facts as they find them to be from the evidence." *Id.* at 102. Justice Harlan, articulating the policy behind the Supreme Court's holding, noted that requiring juries to adhere to courts' instructions ensures that even unpopular laws are enforced. This further emphasized that the role of courts of justice is to enforce the laws uniformly and impartially, without respect of persons or times or the opinions of men. *Id.* at 107.

The *Sparf* court warned that jury nullification risks "confusion and uncertainty in the administration of criminal law." *Id.* at 101–103. Courts across the country continue to warn of the dangers of nullification. Nullification "invites chaos." *United States v. Moylan,* 417 F.2d 1002, 1009 (4th Cir.1969). Calling attention to this power "could encourage the substitution of individual standards for openly developed community rules." *United States v. Washington,* 705 F.2d 489, 494 (D.C. Cir.1983). Nullifiers threaten the judicial system "once juries begin to deviate from [their] core function, our justice system has no more legitimacy than a Kangaroo court." *United*

6

*States v. Luisi,* 568 F. Supp. 2d 106, 122 (D. Mass. 2008).

A juror meets the constitutional standard for impartiality where the juror can lay aside his opinion and render a verdict based on the evidence presented in court. *Patton v. Yount*, 467 U.S. 1025, 1037 (1984).  Therefore, a criminal defendant is not entitled to have the jury instructed that it can, despite finding the defendant guilty beyond a reasonable doubt, disregard the law. *United States v. Rith,* 164 F.3d 1323, 1338 (10th Cir.1999).

This legal principle is captured in Tenth Circuit Pattern Jury Instruction (2021) 1.04, which directs the jury:

> You, as jurors, are the judges of the facts. But in determining what actually happened—that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules of law as I explain them to you.
>
> You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.
>
> It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

It is well established that there is no right to jury nullification.  Juries for the last two centuries have considered only the facts and the law, free from personal opinion, under an oath to follow the law as instructed.  This jury should do the same. The government requests the Court preclude any reference to jury nullification at

7

any phase of the trial, including voir dire, opening statements or closing arguments.

## JURY'S ROLE IN SENTENCING

Third, the government seeks a pretrial ruling preventing the defense from informing the jury of the potential consequences of the charged offense. This is especially important in cases involving the imposition of a mandatory minimum sentence and the impact such a sentence may have on an individual such as the defendant, who suffers from deteriorating health conditions.

The Tenth Circuit has mandated that a jury is obligated to reach its verdict without regard to what sentence might be imposed. *United States v. Greer*, 620 F.2d 1383, 1384–85 (10th Cir. 1980) (citing *Rogers*, 422 U.S. at 40, 95 S.Ct. 2091). Absent an explicit statutory requirement that the jury participate in the sentencing decision, nothing is left for jury determination beyond the guilt or innocence of an accused. *Chapman v. United States*, 443 F.2d 917, 920 (10th Cir.1971)); *see also United States v. Parrish*, 925 F.2d 1293, 1299 (10th Cir.1991)("Unless a statute specifically requires jury participation in determining punishment, the jury shall not be informed of the possible penalties."). The Tenth Circuit has specifically held that it is improper to inform the jury of the defendant's possible punishment. *United States v. Jones*, 933 F.2d 807, 811 (10th Cir.1991). Both *Greer* and *Parrish* involved charges accompanied by mandatory minimum sentences.

The Tenth Circuit Pattern Jury Instruction (2021) 1.20 instructs the jury:

If you find the defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict.

8

The above pattern instruction gives meaning to the well-established principle that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed. *Shannon v. United States*, 512 U.S. 573, 579, (1994)(quoting *Rogers v. United States*, 422 U.S. 35, 40, (1975)). In *Williams v. People of State of N.Y.*, 337 U.S. 241, 247 (1949), the Supreme Court states:

> "In addition to the historical basis for different evidentiary rules governing trial and sentencing procedures there are sound practical reasons for the distinction. In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged. These rules rest in part on a necessity to prevent a time consuming and confusing trial of collateral issues."

Besides the prejudicial effect of informing the jury of sentencing consequences, it is also impractical given the density of modern sentencing procedures. At the time of our nation's founding, juries were likely aware of the consequences of a guilty verdict because sentencing options were simple and limited. *See* U*nited States v. Courtney*, 960 F. Supp. 2d 1152, 1181 (D.N.M. 2013)(affirmed 816 F.3d 681 (10th Cir.2016)) and *United States v. Grayson*, 438 U.S. 41, 45, (1978).

Lastly, unless the jury plays a role in sentencing, any evidence of potential punishment is irrelevant to the jury's determination of guilty and serves no purpose but for nullification.

## NECESSITY OF *FRYE/LAFLER* INQUIRY

The government requests that the Court make certain inquiries consistent with the U.S. Supreme Court's opinions in *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012).

In early 2012, the Supreme Court decided two cases, *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), addressing a defendant's Sixth Amendment right to effective assistance of counsel in plea negotiations. In *Frye*, the Court held that the Sixth Amendment right to the effective assistance of counsel extends to the negotiation and consideration of plea offers that have been rejected or have lapsed.

In *Lafler*, the Court held that where counsel's ineffective advice led to the rejection of a plea offer, and where the prejudice alleged is having to stand trial, a defendant must show that, but for the ineffective advice, there is a reasonable probability that (1) the plea offer would have been presented to the court, (2) the court would have accepted its terms, and (3) the defendant was convicted of more serious offenses or received a less favorable sentence than would have been the case under the terms of the offer. In so ruling, the Court explained that the Sixth Amendment requires effective assistance not just at trial but at all critical stages of a criminal proceeding, including plea bargaining.

These two cases raise challenges for the Court and the government in protecting the record against ineffective assistance of counsel claims. Simply stated, *Frye* concerns whether the attorney communicated a potential plea resolution to the

client and *Lafler* concerns whether the client was given appropriate advice concerning the potential plea. In *Frye*, the majority opinion expressly contemplated protective measures to be taken by the prosecution and the trial court:

> The prosecution and the trial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences. First, the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations. Second, States may elect to follow rules that all offers must be in writing, again to ensure against later misunderstandings or fabricated charges. Third, formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence.

*Frye* at 1408-09.

The competing policies at play involve the government's and the Court's interest in preserving the record while 1) not infringing on attorney-client privilege or 2) involving the Court in plea negotiations which are barred under the Federal Rules of Criminal Procedure 11(c)(1). Under Federal Rule of Criminal Procedure 11(c)(1) the Court may not make any statement which could in any way be construed as encouraging or discouraging a plea or commenting on particular terms or the general advisability of a plea. Accordingly, the Court may not make any inquiry into the substance of the plea offer, and it may be wise for the Court to affirmatively advise the defendant and his counsel to not disclose the substance of the plea offer.

Likewise, defense counsel may not wish to divulge the manner and substance of discussions he has had with the defendant concerning plea negotiations. If defense

11

counsel wishes to acknowledge these efforts on the record and confirm generally that he has discussed the evidence and the risks of trial and conviction with the defendant, as compared to the benefit of the government's plea offer, the *Lafler* concerns could be addressed to protect the record.  However, the government does not believe it would be appropriate for the Court to require the defendant or counsel to discuss those matters.

Given all the following circumstances and competing interests at stake, the government recommends the Court make the following limited inquiry:

1) That the defendant, at some point between July 23, 2025 and the date of the inquiry by the Court, was made aware of the existence of a plea offer by the government;

2) That the defendant wishes to proceed to a trial on the merits; and

3) That the defendant does not wish to further discuss with counsel the advisability of a plea prior to beginning trial proceedings.

Based on the above, the government believes that such an inquiry is now necessary before commencing a trial on the merits.

**WHEREFORE** it is respectfully requested that the Court issue a pretrial ruling on the three issues raised in the Government's Motion in Limine.

Respectfully Submitted,

RYAN A. KRIEGSHAUSER
UNITED STATES ATTORNEY

12

Respectfully submitted,

/s/ Sara L. Walton
Sara L. Walton, #24106
Assistant United States
Attorney District of Kansas
444 SE Quincy,
Suite 290
Topeka, KS 66683
Phone: (785) 295-2680
sara.walton@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Kirk Redmond, attorney for defendant.

/s/ Sara L. Walton
Sara L. Walton
Assistant United States Attorney

13